## HARVEY METCALF vs. THERON BINGHAM.

All ways laid out by the selectmen of towns are public ways, even in cases where they are laid out for the particular accommodation, and at the expense of an individual.

TRESPASS for breaking, and entering the plaintiff's close in Lempster. The defendant pleaded in bar, that for a long time before and at the time, when, &c. there had been, and was a certain private road in said Lempster, beginning at the west side of the second N. H. Turnpike road, &c. thence west one hundred and eighteen rods, thence W. 34 degrees N. 26 rods, thence W. 10 degrees S 6 rods, thence W. 10 N. to the line of *Harris Bingham's* land; which private road, aforesaid, was duly surveyed and laid out by the selectmen of said Lempster, on the 5th September 1811, and the survey and laying out of said road, as aforesaid, was duly recorded &c. And the private road so surveyed, &c. was a free and open way for all such citizens, as might wish to use the same, &c. The defendant then alleged, that his passage through the *locus in quo* in said highway was the act, of which the plaintiff complained.

The plaintiff replied, that there was no such highway, as described in the defendant's plea aforesaid.

The defendant also pleaded in bar, a way of necessity, and issue was joined on the existence of such a way.

The cause was submitted to the decision of the court upon the following facts.

It is agreed, that a way was laid out by the selectmen of Lempster through the *locus in quo*, upon the application of *Harris Bingham*, whose estate in the land, to which said road was laid out, the defendant has. The record of the said laying out is as follows.

"State of N. H. Cheshire, ss. Lempster, Sept. 5, 1811, "survey of an highway laid out at the request and for the "sole benefit of *Harris Bingham*, of said Lempster, begin- "ning, &c. said road is laid out three rods wide, and the line "above described is to be considered the centre of said road, "and the damage assessed by us, to be paid by the said *Harris* "*Bingham* to *Jabez Brainard*, through whose land said road "runs, is $100.    " J. S. } *Selectmen of*        " J. B. } *Lempster.*"

It is also agreed, that *Jabez Brainard*, being seized of lot No. 13, marked on the plan beneath A. and B. on 13th Nov. 1801, conveyed the west half A. to *Harris Bingham*, and on the 7th. February, 1820, conveyed the east half B. to the plaintiff.

There was no road, by which to go to the west half of said lot No. 13, marked on the plan A. and conveyed to *H. Bingham*, as aforesaid, until the road, marked on the plan *a. c.* was laid out by the selectmen as aforesaid.

*Harris Bingham* owned the west ends of lots No. 12, 14, and 15, marked on the plan C. D. and E. and there was formerly a road on the line between lots No. 17 and 16, marked on the plan *o. p.* but that road has not been used since 1808. His house stood at the place marked H. on the plan ; and he died previous to the time of the breaking and entering, of which the plaintiff complains ; and the defendant is his heir.

And it is agreed, that if the court shall be of opinion, that upon the facts aforesaid, neither of the said pleas can avail the defendant, judgment shall be rendered for the plaintiff for $2 damage and cost ; otherwise the plaintiff to become nonsuit.

*Story* and *Woodbury*, for plaintiff.

*Hubbard* and *Upham*, for defendant.

RICHARDSON, C. J. delivered the opinion of the court.

We will in the first place examine the nature of the way laid out in the year 1811, by the selectmen of Lempster, through the *locus in quo* ; because, if at the time of the break-

ing and entering, of which the plaintiff complains, that was a subsisting highway, the defendant, as the case is now stated, will be entitled to judgment ; and it will be unnecessary to inquire, whether there was a way of necessity.

It is urged in behalf of the plaintiff, that the way thus laid out by the selectmen, being expressly for the benefit of *Harris Bingham*, became extinct when he died ; and that neither his heirs, nor his assigns, nor any other persons, have any right, since his decease, to pass through the *locus in quo* by virtue of the doings of said selectmen. In order to ascertain if this be sound law, it will be necessary to examine attentively our statutes on the subject of laying out highways.

The provincial act of the 5 *Geo.* I. *chap.* 98, *sec.* 2. enacted, " that at any time hereafter, when there shall be occasion " for any new highways to be laid out, &c. the selectmen " of such town, making application to the court of quarter " sessions, shewing the necessity and conveniency of the same, " the quarter sessions are hereby empowered to appoint a " meet committee to lay out such highways, &c. and order " that due satisfaction be given by the town, &c. to the par- " ty through whose land such highways shall be laid."

The third section of the same act enacted, " that the se- " lectmen of each town, within this province, are hereby " empowered, &c. to lay out particular and private high- " ways, for such town only, as shall be thought necessary, " making due satisfaction for the same to the owners or pro- " prietors of the lands, through which such highways shall " go."

And in the fourth section it was further enacted, " that " the selectmen of each town, &c. are hereby empowered " to lay out or cause to be laid out particular or private high- " ways, between any of the inhabitants or proprietors, &c. " so as no damage be done to any particular person or his prop- " erty, without due recompence to be made either by the " town, if concerned, or such of the inhabitants and propri- " etors, who derive and reap the benefit of the same." *Prov. Laws* 153–4.

The highways laid out under this statute might be divided into three species, viz. 1. highways laid out from town

Metcalf
*vs.*
Bingham.

town ; 2. highways laid out within towns for the particular accommodation of the inhabitants ; and 3. highways laid out within the town for the particular accommodation of individuals. The first species was distinguished from the other two by the circumstance, that they could be laid out only by the court of sessions. The other two species were distinguished from one another by the circumstance, that the damages done to the owners of the land, through which they were laid out, were in the one case paid by the town, and in the other by individuals. And it seems to us very clear, that the two last species were called in the statute, " private and particular," not because the easement, or right of passage, was the private right of the inhabitants of the town, or of the individuals, for whose particular accommodation the roads were laid out ; but because the use and benefit was chiefly private and particular. Highways from one part of the town to another, in which only the inhabitants of the town have a right of passage, are a species of highways, which, it is believed, never existed in this state. Nor is it doubted, that in highways laid out for the accommodation of individuals the easement has always been understood to be as public, as in a highway laid out from town to town.

No great reliance is perhaps to be placed upon the particular terms used in the provincial acts. But it may be worthy of remark, that the word, *highway*, is applied to all the kinds of ways, mentioned in this statute ; and, it is believed, that word has never been used to denote any other ways, than those common to all.

Thus stood the law previous to the passing of the statute of February 8, 1791, which is a revision of all the statutes on the subject, and which enacts, " that at any time hereaf-" ter, when there shall be occasion for any new highways or " private roads to be laid out in any town or place in this " state, the selectmen of such town or place be and hereby " are empowered, on application, &c. to lay out the same, " whether such highway or road be for the benefit of the " town or public in general, or for the benefit of the " person or persons applying only ; and if such road be for " the benefit of the town or public, due recompence shall

" be made by the town to the owners of the land, through
" which such road is laid out, for all damages such owners
" sustain thereby ; and if such road be only for the benefit
" of an individual or individuals, applying for the same, then
" the recompense shall be made by such individual or indi-
" viduals.

" And in case there be occasion for any new highway, to
" be laid out from town to town, &c. the court of general
" sessions of the peace, for such county, on petition, &c.
" shall, in such manner as they shall think proper, lay out
" the same."—1 *N. H. Laws*, 385.

The same three kinds of roads are mentioned in this stat-
ute, as in the Provincial act. But the roads, to be laid out
by the selectmen of towns, are here called " new highways,"
or " private roads." The truth is, that all roads, laid out
by selectmen, have always been called, both here and in
Massachusetts, private ways. 6 *Mass. Rep.* 7, *Cragie vs.
Mellen.*—*Mass. statute of* 1786, *chap.* 6.—*Mass. Prov. & Col.
Laws* 126.

But that the right of passage is not considered as private
in such ways, in Massachusetts, is clear from the language
of the court in *Cragie vs. Mellen,* and from the case of the
*commonwealth vs. Gowen,* 7 *Mass. Rep.* 378, where it is deci-
ded, that an indictment for a nuisance erected upon a town
way might be maintained.

And no doubt is believed ever to have been entertained in
this state. that a town was liable to be indicted for not re-
pairing a town way.

And we are of opinion, that in ways laid out by selectmen
for the particular accommodation of individuals, under our
present statute, the nature of the easement is not different
from what it is in highways laid out for the benefit of towns.
When once laid out, every person having occasion has a right
to use them. If it were not so, they would of tenbe of
little benefit to the individual, for whose use they were made.

In the case now before us the road was laid out from a pub-
lic highway to the house of *Harris Bingham.* It can hardly
be imagined, that he would have procured a road three rods
wide, have paid to the owner of the land, through which it was

laid out, one hundred dollars, and have the way merely for his own individual travel. It can hardly be believed, that he would have done all this for a road, in which no friend wishing to visit him, no person having business with him, could travel without being a trespasser. He may have been a mechanic, and the greatest advantage he may have derived from the road may have been the convenient access to him, which it gave to those, who chose to go to his house to employ him.

It has been urged, that it could not have been the intention of the selectmen to lay out a highway, because the record states, that the road was laid out for the benefit of *Harris Bingham*. But the nature of the easement cannot depend upon the intention of the selectmen, but upon the meaning of the statute, which gives them authority to lay out the way. It is the intention, not of the selectmen, but of the legislature, that must determine the character of the easement. If it were the intention of the legislature, that all ways laid out by selectmen should be highways, the intention of the selectmen could not alter the nature of the way. It is the province of the selectmen to determine where the road shall be laid out, its width, and perhaps, whether it shall be an open road, or inclosed by gates or bars. But it cannot be conceded, that they can limit the use of a way, they lay out, to an individual.

Nor can we accede to the interpretation, which the plaintiff's counsel has given to the record. It states, that the road is laid out for the sole benefit of *Harris Bingham*; and it has been argued, that being laid out for his sole benefit, it must have been laid out for his sole use. But it seems to us, that the word benefit was not employed as synonymous with use, but as synonymous with accommodation. The selectmen call the road laid out a " highway," and order the damages sustained by the owner of the land to be paid by *Harris Bingham*; and in order to justify this order, they state in the record, that the road was laid out for his sole benefit; by which they most manifestly mean, that the way was laid out solely for his accommodation, and not because the accommodation of the public required a road to be laid out. Such being in

our opinion the meaning of the word, we see nothing in it, which indicates an intention in the selectmen to limit the use of the road to *Harris Bingham.*

It is also objected, that if these roads are decided to be highways, towns will be liable to keep them in repair. This is admitted ; but they will not be compelled to repair them any further, than the accommodation of the public requires; and to that extent there seems to be no reason, why they should not be liable.      *Plaintiff nonsuit.*